UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Judith Rivkin,

Plaintiff,

v.

Hennepin County, Minnesota; Superintendent John Skavnak, individually and in his official capacity; Corrections Unit Supervisor Roger Gaustad, individually and in his official capacity; and Corrections Unit Supervisor Roger Pederson, individually and in his official capacity,

Defendants.

Civil File No. 01-670 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

Currently pending before the Court is Defendants' Motion for Summary Judgment. Plaintiff Judith Rivkin claims that she was retaliated and discriminated against by her employer, Defendant Hennepin County, and her supervisors, Defendants John Skavnak, Roger Gaustad, and Roger Pederson. In particular, Rivkin claims, through 42 U.S.C. § 1983, that she has suffered violations of her due process and equal protection rights. Additionally, Rivkin has filed claims under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01 et seq., the Minnesota Whistleblower Statute, Minn. Stat. § 181.932,

FILED DEC 0 9 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 0 9 2002
DEPUTY CLERK

and the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01 et seq. Lastly, Rivkin has filed a claim for defamation. For the reasons that follow, the Court grants Defendants' Motion.

**BACKGROUND**

Judith Rivkin worked for Hennepin County as a correctional officer at the Hennepin County Adult Corrections Facility ("HACF") from May 1993 until she retired in January 2002. Over the course of her employment with HACF, Defendants concede that Rivkin was a better-than-average correctional officer. Indeed, she was rated four times as "Fully Capable" and five times as "Highly Commendable" in performance evaluations during her tenure, and in 2000, she was awarded a county-wide employee recognition award. (Skavnak Aff. ¶¶ 9, 13(g).) It is also worth nothing, however, that prior to the events giving rise to this case, Rivkin received a disciplinary reprimand in 1996, which was later reduced to a "coaching," as well as numerous other "coachings." (Id. ¶ 11.)

The first, and in Rivkin's view primary, event forming a basis for this lawsuit involved a work release resident from HACF named Roxanne Price. Rivkin knew that Price was incarcerated for vehicular homicide. On August 11, 1999, however, Rivkin observed Price driving. Rivkin reported the incident as part of her duties. It turns out that not only was Price driving without a license, but Price had somehow obtained a parking permit at HACF. On October 11, 1999, Price's probation was revoked. At the revocation hearing, the sentencing judge criticized HACF and its procedures. The following day, a local newspaper

published an article about the revocation which included the judge's harsh comments about the HACF. (Rivkin Aff. Ex. H.) Rivkin suggests that Defendants retaliated against her because of the negative publicity for the HACF generated by her reporting of Price's illegal conduct. (Rivkin Dep. at 50-51.) In particular, she asserts that Defendants scrutinized and improperly reprimanded her on three occasions after the incident with Price.

The day after Rivkin observed Price driving, Rivkin received a phone call from a home monitoring resident, Kimberly Jensen. Jensen told Rivkin that a tornado warning had been issued in her area and she requested permission to leave her home with her young daughter. Rivkin refused to grant Jensen such permission. Jensen apparently called her parents who, in turn, called Rivkin. Rivkin still refused to grant Jensen permission to evacuate her home.

Jensen's parents eventually complained about Rivkin's conduct. (Gaustad Aff. Ex. A (Aug. 12, 1999 letter from Robert D. Jensen to Sean Chapman).) One of Rivkin's supervisors, Roger Gaustad, sent the Jensens a letter, apologizing for Rivkin's behavior. (Id. Ex. B (Aug. 18, 1999 letter from Roger Gaustad to Robert and Linda Jensen).) Gaustad sent copies of this letter to Jensen's sentencing judge and probation officer. In his letter, Gaustad stated that the matter would be "addressed" with Rivkin, Rivkin's decision was not reflective of HCAF policy, and the incident was the result of "misinformation" and a "lack of common sense" on the part of the HACF staff. (Id.) On August 20, 1999, Gaustad verbally reprimanded Rivkin. (Id. Ex. D.)

Frustrated by Gaustad's reprimand, Rivkin filed a grievance with John Skavnak, the HACF Superintendent. Skavnak reviewed the incident and sent a written statement explaining his denial of the grievance to Rivkin's union representative. (Id. Ex. E.) On December 17, 1999, Rivkin's grievance was denied for the final time and the disciplinary action taken against her became final and public. (Id. Ex. F.)

In late May 2000, a resident at HACF, Sandra Hart, complained that Rivkin had made a number of inappropriate and harassing comments to her. Because Hart claimed to be afraid of retaliation, she refused to provide detailed information about her claims. On June 2, 2000, Gaustad and Roger Pederson met with Hart. At that time, she provided them with a verbal list of her allegations. At the conclusion of the meeting, Gaustad determined that the allegations were serious enough to warrant a more thorough investigation.

The investigation resulted in Rivkin's co-workers and a number of residents commenting on Rivkin's poor interpersonal skills. (See Gaustad Aff. ¶¶ 26-41.) Although Rivkin was given an opportunity to respond to the investigation, she chose not to avail herself of that opportunity. (Rivkin Dep. at 110.) Instead, she claimed that she was suffering from stress and took some combination of her accrued sick leave and vacation time. On July 12, 2000, Gaustad determined that Hart's allegations against Rivkin were unsubstantiated. (Gaustad Aff. Ex. I.)

The final incident giving rise to this case occurred on August 11, 2000. At that time, Rivkin was assigned to pick up seven residents from their places of work. Only six residents

were present. After returning to HACF, Rivkin waited to report the missing resident for several hours. As a result, Rivkin received a written reprimand. (Chapman Aff. Ex. A.)

Approximately a year after this last reprimand, Rivkin voluntarily retired from the HACF. Rivkin has now brought the instant action against Defendants, essentially, alleging that her supervisors subjected her to retaliation as a result of the incidents described above.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is only proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). Nevertheless, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that

create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, because discrimination cases often turn on inferences rather than on direct evidence, courts are more deferential to the non-moving party alleging discrimination. Webb v. Garlick Mfg. Co., 94 F.3d 484, 486 (8th Cir. 1996).

### A. Constitutional Claims

Rivkin's constitutional claims are predicated on 42 U.S.C. § 1983, which provides in pertinent part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

To make out a prima facie case under § 1983, a plaintiff must show that: (1) the alleged wrongful conduct was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of some right, privilege, or immunity secured by the Constitution or laws of the United States. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992).

It is undisputed that Defendants were acting under color of state law when they took the actions complained of by Rivkin. To satisfy the second prong of her prima facie case,

Rivkin claims that Defendants violated her Fourteenth Amendment due process and equal protection rights. Because Rivkin cannot establish that Defendants' conduct violated her constitutional rights, the Court will not address qualified immunity. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (stating that the first step in the qualified immunity analysis is whether a plaintiff's allegations, taken in the light most favorable to her, establish a constitutional violation). Additionally, because Rivkin has not come forward with evidence suggesting that a policy, practice, or custom resulted in the deprivation of her constitutional rights, Rivkin's constitutional claims against Hennepin County are dismissed without further comment. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).

**1. Due Process**

Rivkin asserts that her liberty interest in her reputation was infringed without due process of law. Little needs to be said about this argument. It is well-established that a plaintiff's liberty interest may be implicated when a public employer asserts charges against an employee that might seriously damage the employee's standing and associations in her or his community or impose a stigma or other disability on the employee that significantly forecloses her or his freedom to take advantage of alternative employment opportunities. Serafin v. City of Lexington, 547 F. Supp. 1118, 1124 (D. Neb. 1982). The claimed damage to the plaintiff's reputation, however, must occur during the course of the plaintiff's termination. Mascho v. Gee, 24 F.3d 1037, 1039 (8th Cir. 1994) (citing Paul v. Davis, 424 U.S. 693, 710 (1976)). In this case, Rivkin was never terminated. Rather, she retired over

a year after the last disciplinary action against her.

Even if Rivkin could somehow avoid the requirement of showing that the allegedly stigmatizing charges were connected to her termination, "general allegations of misconduct and insubordination [do] not rise to the requisite level of constitutional stigma." Id. Constitutional liberty interests are only at stake when a public "employer has accused the employee of dishonesty, immorality, criminality, racism, or the like." Id. (quoting Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir. 1993)). In this case, the most that Rivkin has alleged is that Defendants falsely or improperly charged her with poor interpersonal skills and poor judgment. Thus, Rivkin's due process claim must be dismissed.

**2. Equal Protection**

Rivkin fares little better with her equal protection claim. Essentially, courts apply the same analysis to § 1983 claims based on alleged equal protection violations in the employment arena as they apply to Title VII claims based on discrimination. See Mummelthie v. City of Mason City, 873 F. Supp. 1293, 1333 (N.D. Iowa 1995) (citing Richmond v. Bd. of Regents of the Univ. of Minn., 957 F.2d 595, 598 (8th Cir. 1992)). Thus, Rivkin must show that: (1) she is a member of a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) that nonmembers of her class were not treated the same. LaCroix v. Sears, Roebuck, & Co., 240 F.3d 688, 693 (8th Cir. 2001) (citing Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999)).

It appears that Rivkin claims that the repeated investigations, coachings, and reprimands to which she was subjected constitute adverse employment actions. Given that none of these actions resulted in her termination, a reduction in her pay or privileges, a reduction in her responsibilities, or any other tangible job consequences, however, the Court finds that Rivkin has not suffered an adverse employment action. See id. at 691 ("[A]n adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities."); Spears v. Missouri Dept. of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000) (stating that only evaluations that result in demotion, reduction in pay, or other tangible job consequences are adverse employment actions).

Even if she did suffer an adverse employment action, however, she advances nothing but unsupported accusations that she has been treated differently than similarly situated men. See Ludwig v. Northwest Airlines, Inc., 98 F. Supp. 2d 1057, 1065 (D. Minn. 2000) (stating that a plaintiff must offer more than conclusory statements to establish that men were treated differently than women). Rivkin asserts that two men accused of serious misconduct were treated differently during the ensuing investigations into their conduct. She has failed to make any showing, however, that the men to whom she vaguely refers were similarly situated to her. She has no firsthand evidence, for instance, about the details of the investigations conducted regarding these men. (See Rivkin Dep. at 90-95.) Rather, she simply believes that the investigations were handled differently from the investigations into the charges against her. (Rivkin Aff. ¶ 34.) This sort of generalization cannot form the basis

of a disparate treatment claim. Accordingly, the Court dismisses Rivkin's equal protection claim.

### B. MHRA

For the reasons discussed discussed above, Rivkin's discrimination claim under the MHRA fails. See LaCroix, 240 F.3d at 693 (applying Title VII analysis to an MHRA claim). In short, Rivkin has made no showing of any adverse employment action or disparate treatment.

### C. Whistleblower Claim

Rivkin also claims that Defendants violated the Minnesota Whistleblower Statute by retaliating against her for reporting Price's illegal driving. The Whistleblower Statute prohibits an employer from discharging an employee who, in good faith, reports a violation or suspected violation of any federal or state law, or rule adopted pursuant to law, to an employer or to any governmental body or law enforcement official. Minn. Stat. § 181.932, subd. 1(a). To establish a prima facie case under the Whistleblower Statute, Rivkin must demonstrate that: (1) she engaged in statutorily protected activity; (2) Defendants took adverse employment action against her; and (3) there is a causal connection between the two events. Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). Individual supervisors, however, cannot be held liable for a violation of the Act. Obst v. Microtron, Inc., 588 N.W.2d 550, 554 (Minn. Ct. App. 1999). Thus, the Court dismisses Rivkin's claims against the individually named Defendants.

For the limited purposes of this Motion, the Court assumes without deciding that Rivkin's reporting of the incident with Price constitutes a protected activity. Rivkin, however, again fails to show that she suffered any adverse employment action. She merely argues that she was coached, reprimanded, and investigated. As discussed above, none of these actions resulted in any material change in the terms or conditions of her employment. Accordingly, Rivkin's Whistleblower claim is dismissed.

**D. MGDPA Claim**

Rivkin's next claims that Defendants violated the MGDPA when Gaustad sent a letter to the Jensens, Kimberly Jensen's sentencing judge, and Kimberly Jensen's probation officer regarding the Jensens' complaint about Rivkin.[1] Enacted to balance the rights of individuals to protect personal information with the rights of citizens to know what the government is doing, Montgomery Ward & Co., Inc. v. County of Hennepin, 450 N.W.2d 299, 307 (Minn. 1990), the MGDPA "regulates the collection, creation, storage, maintenance, dissemination,

[1] Because Rivkin has not come forward with any evidence to suggest that the individually named Defendants are "responsible authorities" within the meaning of the MGDPA, the Court dismisses her claims against them. See Minn. Stat. 13.08, subd. 1 (stating that a civil action may be maintained against "a political subdivision, responsible authority, statewide system, or state agency" for a violation of the MGDPA); M.P. ex rel. K, D.P. v. Indep. Sch. Dist. No. 721, 200 F. Supp. 2d 1036, 1045 (D. Minn. 2002) (holding that the MGDPA does not impose civil liability on individuals). But see Blacklund v. City of Duluth, 176 F.R.D. 316, 319-20 (D. Minn. 1997) (finding that a Director of Finance for the city of Duluth was a responsible authority for the purposes of the MGDPA and therefore liable in his official capacity for any violation of the Act). Hennepin County, however, is a political subdivision and may be held vicariously liable for violations of the Act by one of its employees who is acting within the scope of his or her employment. See Walker v. Scott County 518 N.W.2d 76, 78 (Minn. Ct. App. 1994). Because Gaustad was acting within the scope of his employment when he wrote the letter in question, the Court will consider Rivkin's MGDPA claim against Hennepin County.

and access to government data." Minn. Stat. § 13.01, subd. 3. Although the MGDPA creates a presumption that data is public, all personnel data not specifically delineated as public is private. Navarre v. South Washington County Sch., 652 N.W.2d 9, 22 (Minn. 2002) (citing Minn. Stat. § 13.43, subd. 4). "[T]he existence and status of any complaints or charges against [an] employee" is public data. Minn. Stat. § 13.43, subd. 2(a)(4). Likewise, "the final disposition of any disciplinary action together with the specific reasons for the action and data documenting the basis of the action" is public. Id., subds. 2(a)(5), 2(b).

A government entity's public comments about a complaint against an employee prior to the final disposition of the complaint, however, must "be limited to the possible existence of a complaint . . . . Any disclosure by the government entity during the investigation that describes any quality or characteristic of the complaint, whether general or specific," may constitute a violation of the MGDPA. Navarre, 652 N.W.2d at 22-23. It is important to note that an individual's mental impressions do not constitute governmental data and are, therefore, outside of the scope of the MGDPA. Id. at 25. Nevertheless, "pending final disposition of any disciplinary action, the disclosure of mental impressions derived directly from personnel data recorded in some physical form . . . or derived directly from complaints or charges against the employee, is private data." Id.

To the extent Gaustad's letter merely confirmed that the Jensens' complaint was being processed, it cannot form the basis of a MGDPA claim. Gaustad's letter went further, however, and stated that "[t]he information provided by Officer J. Rivkin is not reflective of

our policy," and "I apologize for this very unfortunate incident and our staff's misinformation and lack of common sense."

These two comments constitute mental impressions that are based directly on the complaint or charge made against Rivkin. Defendants assert that because the latter statement refers only generically to the HACF's staff, it cannot be deemed to relate to Rivkin and therefore cannot be private information. Rejecting a similar argument, the Minnesota Supreme Court in Navarre reasoned that so long as the plaintiff is "readily identifiable as the subject" of a letter, even information contained in the letter that is not explicitly connected to the plaintiff may be private data protected by the MGDPA. Navarre, 652 N.W.2d at 24. Here, Rivkin is obviously the central, if not sole, subject of Gaustad's letter. Accordingly, considering the overall context of the letter, the Court finds that all of Gaustad's comments relate directly to the complaint made against Rivkin, and the two statements at issue go beyond merely acknowledging the existence of the Jensens' complaint.

However, to the extent that Gaustad's comments were communicated to the Jensens, the disclosure does not violate the MGDPA. Because the comments themselves are merely mental impressions, they are only private data protected by the MGDPA insofar as they are derived from private data. Gaustad's comments could be derived only from the content of the Jensens' complaint against Rivkin. The Jensens, however, filed the complaint, so they already knew its contents. There can be no privacy violation where the information disclosed is already known by the person who receives the information. See, e.g., Kline v. Dept. of

Health & Human Servs., 927 F.2d 522, 524 (10th Cir. 1991) (interpreting an analogous federal law).

Additionally, to the extent that Gaustad communicated his mental impressions based on the Jensens' complaint to the judge and Kimberly Jensen's probation officer, this communication was permissible under the "needs-to-know" exception to the MGDPA. Under this exception, private data may be disseminated as necessary for the administration and management of programs specifically authorized by the legislature. Minn. Stat. § 13.05, subd. 3. Probationers such as Kimberly Jensen are sent to HACF pursuant to orders from district court judges and are supervised by probation officers. Because the Jensens' complaint related to the administration of the authorized probation program at the HACF, both the judge and the probation officer needed to know about the status of the Jensens' complaint and its contents. Accordingly, Rivkin's MGDPA claim fails as a matter of law.

However, even if Defendants technically violated the MGDPA, Rivkin cannot show that she has suffered any damages as a result of this violation. Although plaintiffs may recover damages for purely emotional harm under the MGDPA, see Navarre, 652 N.W.2d at 30, no reasonable juror could find that Rivkin was emotionally damaged by comments derived from information already known to, and created by, the Jensens. Other than generally alleging emotional harm, Rivkin has made no showing that the disclosures in Gaustad's letter caused her any damages. Because damages are an essential part of a claim under the MGDPA, see Minn. Stat. 13.08, subd. 1, Rivkin's MGDPA claim fails for this

alternative reason.

### E. Defamation

Rivkin's final claim is that the statements made by Defendants in her reprimands, performance reviews, and Gaustad's letter to the Jensens were defamatory. Defendants maintain that Rivkin's defamation claim runs afoul of the doctrine established in Willis v. County of Sherburne, 555 N.W.2d 277, 282 (Minn. 1996) and Dietz v. Dodge County, 487 N.W.2d 237, 239 (Minn. 1992). These two cases hold that in Minnesota a public employee's sole means of contesting his or her termination is by a writ of certiorari to the Minnesota Court of Appeals. In the absence of a statute providing for a different process, the determination of whether a plaintiff must file a writ of certiorari to contest his or her termination hinges on whether the claim implicates an executive body's decision to terminate the employee. Willis, 555 N.W.2d at 282.

The doctrine established in Willis and Dietz is not as expansive as Defendants suggest. The doctrine only prohibits courts from encroaching upon and reassessing the quasi-judicial decisions of executive bodies. Because a consideration of whether the statements at issue in this case were defamatory will not require the Court to reassess any quasi-judicial decisions of Hennepin County, Rivkin's defamation claim is not barred by the rule of Willis and Dietz. See Willis, 555 N.W.2d at 283 (allowing an employee's common-law defamation claim to be brought in the state district court).

Nevertheless, most of the comments that could potentially be defamatory in this case

were made in performance reviews or reprimands. A qualified privilege protects such comments. See Kletschka v. Abbott-Northwestern Hosp., Inc., 417 N.W.2d 752, 755 (Minn. Ct. App. 1988). To overcome this privilege, Rivkin must prove actual malice on the part of Defendants. See Lewis v. Equitable Life Assurance Soc'y, 389 N.W.2d 876, 891 (Minn. 1986).

In deciding if actual malice exists to defeat a qualified privilege, Minnesota courts focus on the defendant's attitude toward the plaintiff. See id.; Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 258 (Minn. 1980). To demonstrate actual malice, Rivkin must show that Defendants made the comments alleged to be defamatory "from ill will and improper motives, or causelessly and wantonly for the purpose of injuring [Rivkin]." Stuempges, 297 N.W.2d at 257 (quoting McKenzie v. William J. Burns Int'l Detective Agency, Inc., 183 N.W. 516, 517 (Minn. 1921)). Rivkin may prove actual malice by: (1) evidence that leads to an inference that Defendants knew that the comments were false; (2) extrinsic evidence of personal ill-feeling; or (3) intrinsic evidence such as exaggerated language or the character of the language used. See Brooks v. Doherty, Rumble & Butler, 481 N.W.2d 120, 126 (Minn. Ct. App. 1992). Rivkin fails to set forth any arguments or evidence suggesting that Defendants acted with actual malice.

Assuming, however, that the comments in Gaustad's letter are not protected by a qualified privilege, they are only defamatory if: (1) they are false; (2) they were communicated to someone other than Rivkin; and (3) they tended to harm Rivkin's

reputation and lower her in the estimation of the community. Rouse v. Dunkley & Bennett, P.A., 520 N.W.2d 406, 410 (Minn. 1994). Rivkin cannot establish at least two of these elements. First, most of Gaustad's statements are merely opinions untethered to any verifiable facts about Rivkin and therefore cannot be defamatory. See McGrath v. TCF Bank Sav., FSB, 502 N.W.2d 801, 808 (Minn. Ct. App. 1993) (finding that calling an employee a "troublemaker" was not defamatory because it failed to suggest verifiably false information about the employee). Second, Rivkin has made no showing that any statements by Gaustad tended to harm her reputation or lower her in the estimation of the community. Thus, Rivkin's defamation claim is dismissed.

**CONCLUSION**

For the foregoing reasons, and upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Clerk Doc. No. 14) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 9, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*